AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAR 1 4 2023

MITCHELL R. ELFERS
CLERK OF COURT

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A Red Samsung Cellular Smart Phone
(the Subject Telephone)

Case No. 23MR581

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A red Samsung cellular smart phone (the Subject Telephone), more fully described in Attachment A, which is attached & fully incorporated herein. The Subject Telephone is currently in the custody of HSI in Las Cruces, NM.

located in the _____ District of _____New Mexico_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

√ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 841 (a)(1) | Knowingly and intentionally possessing with the intent to distribute |
| 21 U.S.C § 951 | and knowingly and intentionally importing into the United States from the Republic of Mexico, approximately 19.74 kilograms of cocaine. |

The application is based on these facts:
See attached affidavit, Attachment C, which is attached and fully incorporated .

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Fernando Lozoya, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephonically sworn and electronically signed.__ *(specify reliable electronic means).*

Date: 3/14/23

_____
*Judge's signature*

City and state: Las Cruces, New Mexico

The Hon. Kevin R. Sweazea, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic device (referred to in **Attachment B** and **Attachment C** as "the Subject Telephone," to include any SIM cards found in or with the Subject Telephone). This warrant authorizes the forensic examination of the entire devices for the purpose of identifying the electronically stored information described in Attachment B.

## Subject Telephone

The Subject Telephone is a red Samsung, which was seized from Luis Alberto Gonzalez-Ruacho at the time of a narcotics seizure from Gonzalez-Raucho on February 18, 2023, in El Paso, TX. The Subject Telephone is in the custody of HSI in Las Cruces, New Mexico, and is depicted in the photographs below:




## ATTACHMENT B

### PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all records, wherever located and in whatever format, stored on the device(s) described in **Attachment A** that are related to violations of 21 U.S.C. § 841 and 21 U.S.C § 952, by Luis Alberto Gonzalez-Ruacho and his c0-conspirators, and including:

1. Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of customers, distributors, sources of supply, and other associates of the user of the Subject Telephone;

2. Records and recordings of audio and video calls made to or from the Subject Telephone, along with the duration and date and time each such communication occurred;

3. Any message logs or messages, whether sent from, to, or drafted on, the Subject Telephone, along with the date and time each such communication occurred;

4. The content of voice mail messages and audio and video messages stored on the Subject Telephone, along with the date and time each such communication occurred;

5. Photographs or video recordings;

6. Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephone;

7. Information relating to other methods of communications, including the contents of those communications, utilized by the users of the Subject Telephone and stored on the Subject Telephone;

8. Bank records, checks, credit card bills, account information and other financial records; and,

9. Evidence of user attribution showing who used or owned the Subject Telephone, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history.

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

I, Fernando Lozoya, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the cellular phone described in Attachment A, which is currently in the possession of law enforcement agents in Las Cruces, New Mexico, and the extraction from that cell phone of the electronically stored information described in Attachment B.

## AGENT BACKGROUND

2.      I am a Special Agent of Homeland Security Investigations (HSI) assigned to the Office of the Assistant Special Agent in Charge, Las Cruces, New Mexico. As a Special Agent, I am empowered by Title 21, Section 878 of the United States Code to effect arrests, searches, and seizures for violations of the federal narcotics laws. I have been a Special Agent since June 2005, during which time I have specialized in investigations involving narcotics trafficking, weapons smuggling, human smuggling, and financial investigations. I have received specialized training on narcotics trafficking and money laundering and have been personally involved in investigations concerning the possession, distribution, and importation of controlled substances, as well as methods used to finance narcotic transactions. I am familiar with the facts and circumstances of this investigation because of my personal participation in the investigation, discussions with other agents involved in the investigation, and review of reports written by other agents and other evidence and materials concerning the investigation.

3.  Through my training and experience, I know that narcotics traffickers often maintain one or more cellular or smart phones which they utilize to further narcotics trafficking activities. Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors, and other co-conspirators. I know, based upon my training and experience, that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of narcotics, as well as the subsequent laundering and physical movement of the proceeds of these illegal activities.

4.  I also know that some devices utilize subscriber identity module (SIM) cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information and authentication information, and it may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. Which information is stored on the SIM card, on the device, or in both locations, varies and depends on variables such as the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on the SIM card itself, as well as the device in which the SIM card was inserted.

5. I further know from my training and experience that a cache of information concerning drug trafficking activities and money laundering activities and information revealing the identity of the user of the device can be found on these devices. This information includes dialed, received, or missed calls and messages sent, received, or placed in draft status, which can be found on these devices, including in third-party applications (or "apps") with messaging and audio and video calling features, such as Facebook Messenger, WhatsApp, and SnapChat. I know that the identities, telephone numbers, and usernames of other participants involved in narcotics trafficking activity are often maintained in contact lists on these devices, including in third-party social media and other applications. In my experience, narcotics traffickers, money launderers, and bulk cash smugglers also use these devices to take and store photographs or video recordings of themselves, including with their co-conspirators, and with contraband including narcotics, currency, and firearms. Narcotics traffickers also use GPS applications (such as Google Maps or Apple Maps), which can reveal their whereabouts when they conducted or arranged narcotics related activities or travel, as well as establishing identity of the user of the device based on the locations frequented. In addition, narcotics traffickers can also use these devices to store information related to the financial transactions related to narcotics trafficking, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by narcotics traffickers, money launderers, and bulk cash smugglers often contain evidence relating to their narcotics trafficking activities including, but not limited to, contact lists, lists of recent call activity, messages, voicemails, photographs and video recordings, GPS and location information, and financial accounts and records.

## PROBABLE CAUSE

6. On February 18, 2023, at approximately 8:53 am, Luis Alberto Gonzalez-Ruacho entered the United States (U.S.) along with his wife, Karla Susana Olivas-Hernandez, and two underage children, via the Paseo Del Norte, Port of Entry (POE) in El Paso, Texas from the Republic of Mexico. Gonzalez-Ruacho was the driver of the 2006 Ford F-150 bearing Chihuahua, Mexico license plate DZ0868A.

7. Upon approaching the primary lane, Gonzalez-Ruacho and the occupants of the vehicle all presented B1/B2 Visa's for entry in the U.S. Gonzalez-Ruacho informed the primary Customs and Border Protection Officer (CBPO) that they were in route to visit his father in El Paso, TX. Gonzalez-Ruacho gave a negative declaration, stating he did not have any alcohol, tobacco, firearms, or narcotics. Gonzalez-Ruacho claimed that they were traveling directly from his residence in Camargo, Chihuahua, and had only stopped for fuel. Gonzalez-Ruacho denied having any repairs to the vehicle in the past three months or bringing any items into the U.S. for someone else. Gonzalez-Ruacho further claimed responsibility for the vehicle and all its contents. The vehicle was referred for a secondary inspection.

8. While in the secondary area, Gonzalez-Ruacho gave a second negative declaration to another CBPO and once more claimed being responsible for the vehicle and all items within. Gonzalez-Ruacho further stated that there hadn't been any repairs done to the vehicle and that no one else had driven the vehicle besides himself. The secondary inspection utilizing the Z Portal Machine revealed anomalies in the back seat area of the vehicle. Further inspection revealed 16 black taped bundles, weighing approximately 43.50 lbs./19.74 kilograms of a substance that later tested positive for cocaine, within an aftermarket electronic compartment behind the rear seat of the pickup.

9. I responded to the scene, and, in the presence of Drug Enforcement Administration (DEA) SA Matthew Kilby, at approximately 12:34 pm, read Gonzalez-Ruacho his *Miranda* rights in the Spanish language. Gonzalez-Ruacho requested an attorney, and the interview was terminated. Gonzalez-Ruacho was returned to a holding cell pending further investigation.

10. Approximately thirty minutes later, CBP stated that Gonzalez-Ruacho was requesting to speak to the SA's. Upon opening the holding cell's door, Gonzalez-Ruacho stated that he was guilty, and he wanted his family to be released.

11. At approximately 1:04 pm, Gonzalez-Ruacho was taken back to the interview room. Gonzalez-Ruacho asked, "what's awaiting" him. Gonzalez-Ruacho denied needing his *Miranda* rights re-read. Gonzalez-Ruacho once more repeated what he had previously stated when the holding cell door was opened.

12. At approximately 1:09 pm, Gonzalez-Ruacho proceeded to voluntarily sign the *Miranda* rights form and proceeded to give a statement without the presence of an attorney.

13. I asked Gonzalez-Ruacho to explain what led to his current situation. Gonzalez-Ruacho started off by stating that he was unaware of when and how the narcotics were placed within the vehicle and that this was his first time.

14. Gonzalez-Ruacho once more stated that he was unaware when the narcotics were loaded and that his job was to cross the narcotics and proceed to a Walmart. Gonzalez-Ruacho stated that, on either Tuesday or Wednesday, the vehicle was taken from outside of his residence in Camargo, Chihuahua. Gonzalez-Ruacho stated that he was unsure at what time the vehicle was taken or how long it took for the vehicle to be loaded with the narcotics and returned. Gonzalez-Ruacho stated that he believed he was transporting marijuana and that he was going to

be paid $3,000. Gonzalez-Ruacho tried to explain that this was in fact his first time attempting to import narcotics by stating that he's crossed into the U.S. in the pickup for six years and has always been inspected with negative findings. Gonzalez-Ruacho reiterated that this was his first time crossing narcotics into the U.S.

15. Gonzalez-Ruacho stated that he owed money to an individual from Camargo and admitted having a drug habit. At approximately, 1:24 pm, Gonzalez-Ruacho's cellphone (the Subject Telephone), which he had with him at the time of his apprehension, had an incoming phone call from the following unsaved phone number, 648-106-6349. Gonzalez-Ruacho proceeded to give verbal consent for agents to look at the Subject Telephone. Gonzalez-Ruacho placed his print on the Subject Telephone, giving access to law enforcement. When asked for the passcode to the phone so that agents could remove the passcode, preventing the phone from automatically locking, Gonzalez-Ruacho stated that he had forgotten the number that it had been five years since he set the passcode. Without Gonzalez-Ruacho's fingerprint or passcode, the phone locks within minutes.

16. At approximately, 1:27 pm, Gonzalez-Ruacho became noncooperative and the interview was terminated. HSI Las Cruces agents seized the Subject Telephone.

17. Federal prosecution of Gonzalez-Ruacho was accepted in the Western District of Texas, El Paso Division, for violation of 21 U.S.C. § 841 and 21 § U.S.C § 952.

18. Based on my training, knowledge, and experience involving the use of cellular telephones to further drug trafficking activities, as well was information obtained during this ongoing investigation, I believe probable cause exists that Gonzalez-Ruacho utilized the Subject Telephone to coordinate his attempt to import the narcotics in the United States. In conclusion, I

believe that evidence related to the narcotics seized on February 18, 2023, will likely be obtained from Subject Telephone.

19. Based upon the information contained in this Affidavit, there is probable cause to believe that each of the Subject Telephone contains evidence of violations of 21 U.S.C. § 841 and 21 U.S.C. § 952.

## ELECTRONIC STORAGE & FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the Subject Telephone were used, the purpose of their use, who used Subject Telephone, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Telephone because:

   a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works and the data generated by such devices may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Telephone to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. Based on the above information, there is probable cause to believe that evidence of violations of 21 U.S.C. § 841 and 21 U.S.C § 952 are located in the Subject Telephone. Therefore, I respectfully request that this Court issue a search warrant for each of the Subject Telephone, as more particularly described Attachment A, authorizing the seizure and examination of the items described in Attachment B.

Respectfully submitted,

_____
Fernando Lozoya
HSI Special Agent

Electronically submitted and telephonically sworn to before me on March 14, 2023:

_____
THE HONORABLE KEVIN R. SWEAZEA
United States Magistrate Judge